UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DWIGHT T. BULEY

                        Petitioner,                             Case No. 08-cv-13688

v                                                 Honorable Thomas L. Ludington

JEFFREY WOODS,

                         Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

       Petitioner Dwight T. Buley is currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan. Petitioner filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury in the Oakland County Circuit Court of three counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. Petitioner was sentenced as a second felony habitual offender to concurrent sentences of twenty-five to fifty years on the first-degree criminal sexual conduct charges and fifteen years to twenty-two years, six months on the second-degree criminal sexual conduct charges.

       Petitioner alleges that (1) the trial court improperly admitted hearsay statements of the victim, (2) he was denied his right to present a defense when the judge refused to grant a continuance to secure the presence of an expert witness for the defense, (3) he was denied the effective assistance of trial and appellate counsel, (4) the trial court never acquired jurisdiction over his case because the district court failed to file a return in the circuit court after he was

bound over to circuit court following the preliminary examination, and (5) the prosecutor committed misconduct. Respondent has filed an answer to the petition, asserting that the claims are procedurally defaulted and/or lack merit. Because Petitioner's claims are either meritless or procedurally defaulted, the petition for a writ of habeas corpus will be denied.

I.

The victim, T.V., [1] testified that Petitioner was her mother's boyfriend. Petitioner moved in with her mother when the victim was 10 or 11 years old. The victim testified that Petitioner first "sexually harassed" her when she was 11 or 12 years old in November of 2003. The victim testified that they were tickling each other when Petitioner suddenly moved the victim's underwear to the side and inserted his finger into her vagina. The victim testified that Petitioner also orally and vaginally penetrated her. (Tr. II, pp. 149-56). The victim testified that before this incident, she and Petitioner were "kind of nice" to each other. The victim acknowledged that Petitioner would get mad when she did not do her jobs around the house. Petitioner also bothered her, which prevented her from doing her homework, which in turn led to her receiving bad grades. The victim was also upset about the negative comments that Petitioner made about her father and the way he treated her mother. (*Id.,* pp. 155, 180, 206). The victim testified that Petitioner committed other acts of sexual abuse on her between November of 2003 and February of 2005. (*Id.,* p. 175).

In February of 2005, the victim returned from the 7-11 store. Petitioner came into her bedroom and started "grabbing her" and "playing around." The victim asked Petitioner to stop but he did not. Petitioner lifted up the victim's shirt and bra and began touching and kissing her breasts. Petitioner pulled down her pants and underwear and orally and vaginally penetrated the

---

[1] Because the victim was a minor at the time of the offenses and at the time of the trial, the Court will refer to her by her initials to preserve her privacy.

victim.  The victim feared that she had become pregnant from the assault, but this turned out not to be the case. (*Id.,* pp. 156-59).  In March or April of 2005, the victim told her friends Jamelia Peterson and Dorian Demarais about the sexual assaults. (*Id.,* pp. 164-65).

On cross-examination, defense counsel questioned the victim about her failure to immediately disclose the sexual abuse to anyone.  The victim admitted that she kept a diary but did not write about the sexual abuse in it.  The victim admitted that although the first incidents occurred in 2003, she did not disclose them to her friends until 2005.  The victim also admitted that she never told her father about the sexual abuse. (*Id.,* pp. 191-93).

Dorian Demarais testified that during track practice, in April of 2005, the victim informed her that Petitioner had sexually molested her.  The victim was upset and thought that she might be pregnant.  Dorian urged the victim to tell her mother but the victim was afraid of her mother's reaction.  The victim instead told a teacher about the assaults. (*Id.,* pp. 263-67, 273).

In Spring of 2005, the victim's teacher at the time, Ms. Powe, noticed that the victim appeared "stressed" at school.  Ms. Powe asked her what was wrong.  The victim at first said that there were no problems at home, but the next day disclosed the sexual assaults to Ms. Powe, who took her to another teacher, Ms. Fleming. (*Id.,* pp. 166-67).

Ms. Fleming testified that the victim was brought to her by Ms. Powe after the victim had informed Ms. Powe that her mother's boyfriend had been touching her inappropriately.  Ms. Fleming called the victim's mother to set up a meeting with her.  Ms. Fleming informed the victim's mother about the sexual abuse allegations, both over the telephone and at the subsequent meeting.  The victim's mother was crying and seemed very remorseful at the meeting.  She told Ms. Fleming that Petitioner had moved out of the home and that she had placed a lock on the

- 3 -

victim's door.  Ms. Fleming admitted that she should have informed Protective Services about the sexual assault allegations. (*Id.,* pp. 250-54).

The victim testified that after her mother had been called to the school, the victim herself informed her mother about the sexual abuse.  The victim's mother wanted to either confront Petitioner or call the police, but the victim did not want to do so.  The next day, instead of going to school, the victim and her mother went to a park to talk about what had occurred.  The victim and her mother then went to Petitioner's mother's home and informed his mother about the sexual abuse.  The victim and her mother bought locks for the victim's bedroom door to keep Petitioner out of her room during the night. (*Id.,* pp. 169-71).

The victim's mother, Veronica Vanderbilt, testified that the victim was born in 1991 and before December 2005 was living with herself and Petitioner in Auburn Hills.  Ms. Vanderbilt was still dating Petitioner at the time of the trial.  Ms. Vanderbilt met with school officials after being contacted by Ms. Fleming but claimed that they only mentioned that the victim had indicated that Petitioner had been picking on her and that she was upset about Petitioner disciplining her.  Ms. Vanderbilt claimed that she was never informed that the victim had accused Petitioner of molesting her.  Ms. Vanderbilt claimed that she put a lock on her daughter's door for unrelated reasons.  Ms. Vanderbilt claimed that the first time she learned about the sexual abuse allegations was from Protective Services in December of 2005.  Ms. Vanderbilt also denied telling the victim to lie to Ms. Fleming and claim that Petitioner had left the home when he had not.  Ms. Vanderbilt admitted that there was a neglect petition pending against her in family court.  She also admitted that she did not cooperate with the police in the investigation. (*Id.,* pp. 215-23, 230, 244-45).

The victim testified that around Thanksgiving or early December of 2005, Petitioner came into her room and tried to grab her breasts. (*Id.,* pp. 172-74).

Ms. Lori Woodmore was another one of the victim's teachers. Ms. Woodmore testified that the victim was a good student. However, in December of 2005 the victim's behavior changed; she became very unhappy and was not getting her work done. On December 16, 2005, Ms. Woodmore asked the victim what was wrong and the victim began to cry. Although first denying that anything was wrong, the victim disclosed that her mother's boyfriend had touched her inappropriately. Ms. Woodmore dismissed the rest of the class and took the victim to the principal's office. Ms. Woodmore left the victim with the principal, Ms. Ewing. The victim was crying while speaking with the principal. Ms. Woodmore was called back to the principal's office and she remained while the victim disclosed what had occurred. Protective Services was then summoned. (*Id.,* pp. 126-31).

Ms. Arlee Ewing, the school principal, also testified that the victim was a good student and not a disciplinary problem. Ms. Ewing testified that the victim was upset and crying when she was brought to her office by Ms. Woodmore. The victim was reluctant to talk about what had occurred but Ms. Ewing persisted in questioning her. The victim apologized for not being honest with Ms. Fleming, claiming that she had told Ms. Fleming at her mother's prompting that Petitioner was no longer in the home, although he was still present. Ms. Fleming was summoned and Ms. Ewing told her to file a Protective Services report. Ms. Ewing learned that the victim had previously informed Ms. Powe and Ms. Fleming about the sexual assaults, but that Protective Services had not been informed, as required by law. A Protective Services worker responded to the school. (*Id.,* pp. 137-47).

- 5 -

Ms. Fleming testified that she was summoned to Ms. Ewing's office on December 16, 2005, and saw the victim crying.  The victim apologized for lying to Ms. Fleming earlier, informing her that Petitioner was still living with her and still touching her inappropriately. (*Id.,* pp. 254-57).

Chris DeBoer from Protective Services testified that in December of 2005, he received a referral alleging the victim had been sexually abused by her mother's live-in boyfriend.  Mr. DeBoer went to the school and interviewed the victim, who told DeBoer about the inappropriate touching.  While disclosing what had occurred, the victim was upset. (*Id.,* pp. 302-03)

Detective Michael Thomas from the Auburn Hills Police Department testified that he was informed by Care House regarding the allegations and that Protective Services had initiated an investigation. (*Id.,* pp. 277-79).  Detective Thomas stated that the victim was referred for a medical examination but no evidence was obtained from the examination. (*Id.,* pp. 282-84).

Petitioner's conviction was affirmed on appeal. *People v. Buley,* No. 271801 (Mich.Ct.App. December 11, 2007); 747 N.W.2d 299 (Mich. 2008); *reconsideration den.* 753 N.W. 2d 154 (Mich. 2008).

Petitioner filed an application for habeas relief with this Court, which was subsequently held in abeyance so that Petitioner could return to the state courts to exhaust additional claims. *See Buley v. Bell*, 2010 WL 2836910 (E.D. Mich. July 19, 2010).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Buley*, No. 06-206911-FC (Oakland County Cir. Ct. Op. & Order December 2, 2010). The Michigan Court of Appeals denied leave to appeal.  *People v. Buley*, No. 301790 (Mich. Ct. App. Oct. 5, 2011).  Petitioner filed an application for leave to appeal this decision in the Michigan Supreme Court.  The Michigan Supreme Court ordered the prosecutor to respond to

one of Petitioner's misconduct claims. *People v. Buley*, 822 N.W.2d 224 (Mich. 2012).  After receipt of a response from the prosecutor's office that included four affidavits, the Michigan Supreme Court denied Petitioner relief under Michigan Court Rule 6.508(D).  *People v. Buley*, 825 N.W.2d 86 (2013).

This Court subsequently reinstated the petition to the Court's active docket and permitted Petitioner to file an amended petition for writ of habeas corpus.  In his original and amended habeas petitions, Petitioner seeks habeas relief on the following grounds:

> I. Petitioner is entitled to habeas corpus relief, when the issues presented herein are of constitutional magnitude rendering the Petitioner's conviction and sentence a manifest of injustice.
>
> II. Petitioner is entitled to a new trial when the errors of the admission of hearsay evidence was so egregious that it affected the substantial rights of the Petitioner by infringing upon the Petitioner's constitutional rights to confrontation, reasonable doubt, and the structure of the trial. U.S. Const. Amend. V, VI, XIV; Mich. Const. 1963.
>
> III. Petitioner's rights to confrontation and to present a defense were violated when after an eleventh-hour decision to allow Petitioner to call an expert witness, the trial court should have granted his trial day request for an adjournment to allow counsel to prepare that expert witness because the testimony's subject matter was different than originally requested and agreed upon.
>
> IV. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel when the trial counsel a) failed to object to hearsay testimony; b) failed to call relevant defense witnesses in violation of Petitioner's Sixth Amendment rights.
>
> V. Did the trial court and Michigan Court of Appeals unreasonably apply *Crain v. U.S.* 162 U.S. 625 (1896), to [its] determination whether a jurisdictional defect occurred where the decision to deny relief on the claim was based on an unreasonable determination of the facts in light of the evidence the petitioner presented in the state trial court, that the "return" was not filed until 39 days after he was arraigned in circuit court?
>
> VI. Did the trial court and Michigan Court of Appeals unreasonably apply U.S. Supreme Court precedent in determining that the petitioner was not denied his basic right to a fair trial where the prosecutor had knowledge that the trial court did not have subject matter jurisdiction over the petitioner, and the prosecutor committed other acts of misconduct?
>
> VII. Did the trial court and Michigan Court of Appeals unreasonably apply *United States v. Cronic*, 466 U.S. 648 (1984), *Cuyler v. Sullivan*, 466 U.S. 335 (1980), and *Strickland v. Washington*, 466 U.S. 668 (1984), in finding that trial counsel

did not render ineffective assistance due to a conflict of interest and other instances of inaction?

VIII.  Did the trial court and Michigan Court of Appeals unreasonably apply *Evitts v. Lucey*, 469 U.S. 387 (1985), and other U.S. Supreme Court precedent by finding that petitioner's appellate counsel did not render ineffective assistance, due in part to her failures, and due to state interference when the prosecutor and trial counsel failed to disclose a conflict that prejudice the petitioner?

IX.  Did the trial court and Michigan Court of Appeals unreasonably apply *Washington v. Texas*, 388 U.S. 14 (1967), in making the determination that the trial court did not deny the petitioner his due process rights to present a defense and to call witnesses on his behald where it denied a ten day adjournment requested by trial counsel after the trial court reversed itself and decided at the eleventh hour to  allow an expert witness to testify that the petitioner's own characteristics and traits are not consistent with an individual who could commit the sexual offenses he had been charged with? [2]

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)).

---

[2] The Court has renumbered Petitioner's first through fifth claims that he raised in his amended habeas petition (ECF No. 28) as claims numbered five through nine for consistency.  Petitioner earlier filed an "amended habeas petition", ECF No. 4, but it is virtually identical to the original habeas petition that was filed. ECF No. 1.  In addition, Petitioner's first claim is not actually a claim for substantive relief but simply argues the standard of review for habeas cases.

Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> *Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has

> explained that an unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt."

*Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme "Court has held on numerous occasions that it is not" "an unreasonable application of clearly established Federal law" "for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008)); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003).

III.

A.

In his second claim, Petitioner contends that the trial court erred in permitting the introduction of out-of-court statements made by the victim to several individuals on the ground that such statements were inadmissible hearsay. Petitioner further contends that such statements did not qualify as prior consistent statements that would have been admissible pursuant to Michigan Rule of Evidence 801(d)(1)(b) because they were made after the victim had a motive to fabricate her allegations against Petitioner.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 F. App'x. 147, 150 (6th Cir. 2003); *see also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002) (petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review).  The admission of this evidence in violation of Michigan's rules of evidence would not entitle Petitioner to relief.

The admission of a prior consistent statement when the declarant is available for cross-examination at trial, as was the case here, is not a question that rises to the level of a constitutional violation for purposes of habeas corpus relief. *See United States ex. rel. Gonzalez v. DeTella,* 918 F. Supp. 1214, 1222 (N.D. Ill. 1996) (internal citations omitted).  Indeed, there is no violation of the Sixth Amendment's Confrontation Clause when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988); *see also Crawford v. Washington,* 541 U.S. 36, 59, n.9 (2004); *United States v. Mayberry*, 540 F.3d 506, 516 (6th Cir. 2008).  As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create

- 11 -

a confrontation clause problem." *California v. Green,* 390 U.S. 149, 162 (1970). In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens,* 484 U.S. at 560 (internal citations omitted). When a declarant's out of court statement is admitted at a criminal defendant's trial, "the question is whether defendant has the *opportunity* to cross-examine the declarant at trial." *Strayhorn v. Booker,* 718 F. Supp. 2d 846, 867 (E.D. Mich. 2010) (emphasis original). Because the victim testified at Petitioner's trial and was subject to cross-examination, the admission of her out of court statements to her principal, teachers, and the Protective Services worker did not violate Petitioner's Sixth Amendment right to confrontation. *See Shannon v. Berghuis,* 617 F. Supp. 2d 596, 604 (W.D. Mich. 2008).

Petitioner's claim about the admission of prior consistent statements that the victim made to her principal, teachers, and Protective Services caseworker involves at best an error of state law that is not cognizable in federal habeas review. *See Regan v. Hoffner,* 209 F. Supp. 2d 703, 715 (E.D. Mich. 2002). Because the victim was subject to cross-examination at the petitioner's trial, the admission of her out-of-court statements presented no Confrontation Clause problems. *Id.* Moreover, there is "no Supreme Court decision holding that the improper use of a witness's prior consistent statements violates the Constitution." *Drain v. Woods*, 902 F. Supp. 2d 1006, 1037 (E.D. Mich. 2012). Because the admission of the victim's prior consistent statements did not deprive Petitioner of a fundamentally fair trial, Petitioner is not entitled to habeas relief on his claim. *See Benton v. Booker,* 403 F. App'x 984, 986 (6th Cir. 2010).

## B.

In his third and ninth claims, Petitioner contends that his right to present a defense was violated when the trial judge refused to grant defense counsel a ten-day adjournment on the

morning of trial to permit him to prepare a defense expert witness who allegedly would have testified that Petitioner's characteristics and traits were not consistent with one who would sexually assault a child.  Prior to trial, defense counsel had filed a motion in limine to admit testimony by a clinical psychologist who had interviewed and tested Petitioner and had concluded that Petitioner did not have the characteristics of someone with a sexual interest in children or someone who would commit a sexual assault on a child.  Judge Wendy Potts, the judge originally assigned to the case, initially ruled that the expert's testimony was inadmissible. (Tr. 4/26/06, p. 10).   The next day, however, Judge Potts reversed herself and ruled that Petitioner could present the testimony of the expert to address Petitioner's characteristics and traits and whether those characteristics were consistent with an individual who would sexually abuse a minor. *See People v. Buley,* No. 06-206911-FC (Oakland County Circuit Court, April 27, 2006).

For reasons not clear from the record, Petitioner's case was reassigned to Judge Steven N. Andrews for trial.  On May 2, 2006, the first day of trial, defense counsel requested an adjournment in order to prepare the expert to testify. Petitioner claimed that an adjournment was necessary because the subject-matter of the expert's testimony had changed once Judge Potts changed her ruling regarding admission of the testimony.  Judge Andrews denied the request, stating that counsel could ask Judge Potts for an adjournment because this was her case, but he refused to do so.  Judge Andrews denied the request on the ground that counsel knew in advance that this witness was going to testify and should thus have been prepared for him.  Judge Potts subsequently denied the petitioner's request, on the ground that she did not wish to delay the trial. (Tr. I, pp. 4-6).

The Michigan Court of Appeals rejected Petitioner's claim:

> Defendant presented no evidence that he attempted to contact his expert to see if he would be available to testify. Additionally, defendant merely assumed his expert could not testify regarding the subject matter allowed by the trial court, but did not present any evidence that he discussed the proposed subject matter with the expert. Because defendant has not shown good cause for adjournment or that he used diligent efforts to produce his expert witness, we find that the trial court did not abuse its discretion by denying defendant's request to adjourn.
> *People v. Buley,* No. 271801, Slip. Op. at * 6.

In criminal proceedings, a trial court's denial of a continuance rises to the level of a due process constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. *See Burton v. Renico,* 391 F.3d 764, 772 (6th Cir. 2004). To obtain habeas relief, a habeas petitioner must show that the denial of his request for a continuance resulted in actual prejudice to his defense. *Id.; see also Powell v. Collins,* 332 F.3d 376, 396 (6th Cir. 2003). Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense. *Powell,* 332 F.3d at 396.

The Michigan Court of Appeals' rejection of Petitioner's claim was not an unreasonable application of clearly established law, so as to entitle Petitioner to relief. The trial judge did not err in denying Petitioner a continuance in order to prepare for his expert's testimony because defense counsel was already familiar with the expert's proposed testimony. *See e.g. Brown v. O'Dea*, 187 F.3d 572, 579-80 (6th Cir. 1999); *overruled on other grds,* 530 U.S. 1257 (2000) (State Supreme Court's finding that trial court's denial of petitioner's request for continuance, during trial, to prepare for cross-examination of expert did not deprive him of a fair trial did not warrant federal habeas relief, where petitioner's counsel had consulted with expert during weekend preceding trial and learned of expert's hesitancy over his test results). Furthermore, there was no showing from defense counsel that he had made any attempt to locate his expert witness and ascertain whether he could come to court and testify at the scheduled trial date.

- 14 -

Because there is no showing that defense counsel exercised due diligence in attempting to contact a witness whom "he knew right from the beginning was central to his defense," the trial court did not err in denying his request for a continuance. *See United States v. Sawyers*, 902 F.2d 1217, 1219 (6th Cir. 1990).

Finally, as a federal judge has noted in another district, the majority view amongst the state courts is to reject as irrelevant and scientifically unreliable proffered expert testimony that a criminal defendant is unlikely to have engaged in sexual misconduct because he or she does not exhibit certain indicators that the expert determined are associated either with pedophilia or sexual abuse. *See Bowen v. Haney,* 622 F. Supp. 2d 516, 541-45 (W.D. Ky. 2008) (collecting cases) (Supreme Court of Kentucky's rejection of petitioner's claim that trial court, in prosecution for sex-related offenses, denied him his right under Sixth Amendment to meaningfully present complete defense after it excluded proposed testimony of his expert forensic psychiatrist that defendant did not exhibit any known indicators for pedophilia, and therefore was less likely to commit pedophiliac acts, as being scientifically unreliable and irrelevant to charged offenses, and refused to permit defense continuance to obtain replacement expert to testify to same conclusions after expert unexpectedly died, was not unreasonable application of clearly established federal law, so as to entitle petitioner to habeas relief). Accordingly, Petitioner is not entitled to habeas relief on this claim.

## C.

In his fourth claim, Petitioner contends that he was deprived of the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must

- 15 -

demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.

Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington v. Richter*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard."

*Harrington*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

> Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

> *Harrington*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Importantly, "reliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" eight years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington*, 131 S. Ct. at 789.

Petitioner first contends that his trial counsel was ineffective for failing to object to the admission of the victim's out of court statements on the ground that they were inadmissible hearsay evidence.

The Michigan Court of Appeals rejected Petitioner's claim:

The defense theory of the case was that the victim made allegations of sexual abuse to others because she disliked defendant. Therefore, defense counsel's failure to object to the hearsay statements may have been part of his trial strategy given that defendant did not outrightly deny that the victim made the allegations to others, and "this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." Moreover, defendant cannot show that but for his counsel's failure to object to the hearsay statements the result of the trial would have been different, given that there was ample nonhearsay testimony to convict defendant, as discussed *infra*.

*Buley,* No. 271801, Slip. Op. at * 7 (internal citation omitted).

Petitioner is not entitled to habeas relief on his claim for two reasons. First, counsel's decision to allow the prosecution to introduce the victim's prior consistent statements may have been a strategic decision to use these out of court statements to buttress the defense theory that the victim fabricated these allegations because she disliked Petitioner, since this would be consistent with the defense theory that the victim was making these sexual abuse allegations up because she wanted to get rid of Petitioner. Because there may have been a valid strategic reason for the admission of the victim's hearsay statements to others, Petitioner has not shown that trial counsel was deficient in failing to object to this evidence. *See Schauer v. McKee,* 401 F. App'x 97, 100 (6th Cir. 2010).

Second, Petitioner was not prejudiced by counsel's failure to object to the victim's out-of-court statements to the witnesses about the sexual abuse allegations because the victim testified in court about these sexual abuse allegations. *See Adams v. Smith,* 280 F. Supp. 2d 704, 721 (E.D. Mich. 2003). Petitioner is also unable to show that he was prejudiced by counsel's failure to object to the admission of the prior consistent statements, in light of the fact that the Michigan Court of Appeals concluded that the admission of this evidence was harmless error. *See Drain v. Woods,* 902 F. Supp. 2d at 1037.

Petitioner next contends that trial counsel was ineffective for failing to call the victim's cousin, Jorge Chacon, a/k/a George Ciccone, and the victim's treating physician, Dr. Mary Smith, to testify.  The Michigan Court of Appeals rejected the claim, first, because Petitioner had failed to advance an offer of proof or an affidavit concerning the proposed testimony of the witnesses.   Secondly, the Michigan Court of Appeals concluded that Dr. Smith's proposed testimony that she found no physical evidence of sexual abuse was cumulative of Detective Michael Thomas' testimony that the medical examination produced no medical evidence. *Buley,* No. 271801, Slip. Op. at * 7.

Petitioner failed to attach any affidavits from these witnesses to his Rule 4 supplemental brief or the motion for an evidentiary hearing that he filed with the Michigan Court of Appeals. By failing to present any evidence to the state courts in support of his ineffective assistance of claim, Petitioner is not entitled to an evidentiary hearing to address this ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)).

In any event, the proposed testimony of these two witnesses would have been cumulative of other testimony.  Petitioner claims that Chacon, the victim's cousin, was prepared to come to court to testify that he suggested to the victim that she make up false sexual allegations to get rid of Petitioner.  The victim, however, admitted at trial that she had exchanged text messages with her cousin in which she told him how much she disliked Petitioner and asked Chacon how she could get rid of him.  The victim also acknowledged that she did not tell Chacon about the sexual abuse. (Tr. II, p. 199).  With respect to Dr. Smith's proposed testimony, Detective Thomas already acknowledged that the medical examination did not turn up any corroborating medical evidence.

- 19 -

Petitioner was not prejudiced by counsel's failure to call these witnesses because their testimony was cumulative of other evidence presented at trial in support of Petitioner's claim that the victim had fabricated the sexual assault charges. *Wong,* 558 U.S. at 22-23; *see also United States v. Pierce,* 62 F.3d 818, 833 (6th Cir. 1995); *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001).  In this case, the jury had significant evidence presented to it that the victim had delayed reporting the sexual abuse and had been less than truthful about the nature of the prior assaults, as well as her motives for fabricating the sexual assault charges against Petitioner.  Because the jury was "well acquainted" with evidence that would have supported Petitioner's claim that the victim fabricated these charges, additional evidence in support of the Petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23.  Petitioner is not entitled to relief on his fourth claim.

## D.

In his fifth claim, Petitioner contends that the Oakland County Circuit Court lacked jurisdiction over his case because the "return" from the examining magistrate was not filed with the circuit court until 39 days after he had been arraigned.

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler,* 532 F.2d 1058, 1059 (6th Cir. 1976); *see also Daniel v. McQuiggin,* 678 F. Supp. 2d 547, 553 (E.D. Mich. 2009).  The Sixth Circuit has noted that "[a] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).  Petitioner's claim that the trial court lacked jurisdiction to address the state charges against him raises an issue of state law because it questions the interpretation of Michigan law, and therefore it is not cognizable in federal habeas

review. *See United States ex. rel. Holliday v. Sheriff of Du Page County, Ill.,* 152 F. Supp. 1004, 1013 (N.D. Ill. 2001); *Cf. Toler v. McGinnis,* 23 F. App'x 259, 266 (6th Cir. 2001) (district court lacked authority on habeas review to review petitioner's claim that the state court erred in refusing to instruct jury on the requirements for extraterritorial jurisdiction, because the claim was contingent upon an interpretation of an alleged violation of state law).

Moreover, any defects in the preliminary examination process would not entitle Petitioner to habeas relief. A prior judicial hearing is not a prerequisite to prosecution by information. *Gerstein v. Pugh,* 420 U.S. 103, 119 (1975). Thus, there is no federal constitutional right to a preliminary examination. *See United States v. Mulligan,* 520 F.2d 1327, 1329 (6th Cir. 1975); *Dillard v. Bomar,* 342 F.2d 789, 790 (6th Cir. 1965); *Scott v. Bock,* 241 F. Supp. 2d 780, 793 (E.D. Mich. 2003).

In addition, a jury's guilty verdict renders harmless any error in the charging process. *United States v. Mechanik,* 475 U.S. 66, 73 (1986). Any defects following Petitioner's bindover after the preliminary examination would be harmless error in light of Petitioner's subsequent conviction at trial. *See e.g. Redmond v. Worthinton,* 878 F. Supp. 2d 822, 844 (E.D. Mich. 2012). Petitioner is not entitled to habeas relief on his fifth claim.

E.

As part of his sixth and seventh claims, Petitioner claims that the prosecutor committed misconduct by withholding text messages between herself, the officer in charge of the case, and the caseworker from Protective Services, which could have been used to impeach the victim and other prosecution witnesses. Petitioner further claims that these text messages establish that the prosecutor and her officer in charge of the case engaged in witness intimidation. Petitioner further claims that these text messages establish that his trial counsel had labored under a conflict

of interest, because the prosecutor in Petitioner's case had previously prosecuted the Petitioner's defense counsel for possession of cocaine and had mentioned the prior prosecution to defense counsel in order to pressure him into not zealously representing his client.

Petitioner raised these claims for the first time in his post-conviction motion for relief from judgment. Petitioner attached to his motion affidavits from the victim's mother, Veronica Vanderbilt; Petitioner's sisters Jennifer Buley, Tonja Taylor, and Rosetta Alaouie; and Petitioner's mother, Doris Taylor. The affiants claim that in July or August of 2008, a man named Anthony Reeves met with them at Jennifer Buley's house concerning T-Mobile text messages that he had received from an unidentified man concerning discussions between the prosecutor, the officer in charge of the case, and the Protective Services caseworker concerning the case. The five affiants allege that Reeves told them that he had received an e-mail from the assistant prosecutor ordering him to attend a meeting with her. Reeves allegedly went with an attorney named Stuart Friedman to meet with the assistant prosecutor, who threatened to prosecute Reeves if he divulged these text messages. Significantly, Petitioner has never provided an affidavit from Anthony Reeves to the state or federal courts, nor has he provided an affidavit from, or even identified, the man who allegedly obtained these text messages. More importantly, although the affiants claim that an attorney accompanied Reeves to the meeting with the prosecutor, Petitioner does not have an affidavit from this attorney, who presumably would have had a duty to report such alleged unethical conduct by the prosecutor to the Michigan Bar Association and/or the Oakland County Circuit Court.

The Michigan Supreme Court ordered the Oakland County prosecutor to respond to these allegations after Petitioner had filed an application for leave to appeal following the denial of his state post-conviction appeal by the Michigan Court of Appeals. The prosecutor provided four

affidavits to the Michigan Supreme Court. Elisa Ramunno, the assistant prosecutor in this case, denied that she ever text messaged the detectives or the Protective Services caseworker in this case. Ms. Ramunno reviewed the text messages attached to Petitioner's pleadings and denied sending them. Detective Michael Thomas indicated that his police department cell phone did not have the capability to text message. Chris DeBoer, the Protective Services caseworker, reviewed the text messages that Petitioner attached and denied sending any text messages to the prosecutor about this case. Finally, Lisa M. Oppmann, the supervisor for the Oakland County Prosecutor Office's Internal Services division, indicated in an affidavit that Oakland County did not use T-Mobile as a cell phone carrier for attorneys in the prosecutor's office during December of 2005 and January of 2006, when the text messages were made. [3]

After receipt of the affidavits, the Michigan Supreme Court denied Petitioner leave to appeal.

A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). The presumption of correctness given to the findings of a state court on federal habeas review also

---

[3] *See* Appendix H, attached to the prosecutor's brief. ECF No. 33-4. Respondent has argued that these two subclaims are procedurally defaulted because Petitioner raised these claims for the first time in his post-conviction motion for relief from judgment and failed to show good cause and actual prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise these claims on his appeal of right. The Court declines to procedurally default these claims, as it does with Petitioner's remaining claims, see Section F, *infra*, because Petitioner alleges that he did not obtain the evidence in support of these claims until after his direct appeal concluded. Furthermore, the Michigan Supreme Court had before it affidavits from the assistant prosecutor, the detective in charge of the case, the Protective Services caseworker, and the Supervisor of the Oakland County Prosecutor's Office Internal Services division that the Oakland County Circuit Court judge did not have before him when he rejected Petitioner's claims. The Michigan Supreme Court rejected Petitioner's appeal without specifically mentioning subsection 3 of M.C.R. 6.508(D) or Petitioner's failure to raise these subclaims on his direct appeal. Because the trial judge did not have the evidence from the prosecutor's office in front of him when he rejected the claims, and the Michigan Supreme Court did not clearly invoke M.C.R. 6.508(D)(3) in rejecting the petitioner's subclaims after receiving this evidence, it is unclear whether these subclaims have been procedurally defaulted.

applies to the factual findings of a state appellate court based on the state trial record. *See Sumner v. Mata,* 449 U.S. 539, 546-47 (1981).  The presumption of correctness "also applies to those implicit findings of fact that are inherent in [a state court's] resolution of conflicting evidence." *McPherson v. Woods*, 506 F. App'x 379, 387 (6th Cir. 2012); *see also McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996) (implicit findings are also presumed to be correct "because of the trial court's ability to adjudge the witnesses' demeanor and credibility").  A state court's summary determination that affidavits lacked credibility is entitled to a presumption of correctness in federal habeas corpus proceedings. *See, e.g., In re Byrd,* 269 F.3d 561, 564-65, 574-75 (6th Cir. 2001).

        In rejecting Petitioner's prosecutorial misconduct and conflict of interest claims, the Michigan Supreme Court clearly rejected the credibility of the text message evidence and the affidavits in support of such evidence.  Petitioner has not offered any clear and convincing evidence to rebut this credibility determination.  The assistant prosecuting attorney, the detective in charge of the case, and the Protective Services caseworker signed affidavits denying that they had sent these text messages.  The affidavits in support of Petitioner's claims involving the text messages are all signed by his mother, sisters, and girlfriend.  As mentioned above, Petitioner never provided any court with an affidavit from Anthony Reeves, who claimed to have obtained these text messages, or from his attorney Stuart Friedman, who allegedly attended the meeting with the assistant prosecutor, in which she threatened to prosecute Reeves if he divulged this information.  Significantly, Petitioner has neither identified the man who actually obtained these alleged text messages, let alone provided an affidavit from him.  More importantly, although Petitioner's mother, sisters, and girlfriend claim that the prosecutor threatened to prosecute Reeves if he divulged these text messages, neither the Michigan Department of Corrections'

Offender Tracking System (OTIS) nor the Oakland County Circuit Court website reveal any indication of anAnthony Reeves being prosecuted subsequent to the filing of the petitioner's motion for relief from judgment, even though the petitioner indicated in his motion that his family had obtained these messages from Mr. Reeves.[4]   Because Petitioner has no credible evidence in support of these two subclaims, he is not entitled to habeas relief on them.

F.

Respondent contends that Petitioner's remaining claims are procedurally defaulted because he raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by Michigan Court Rule 6.508(D)(3).

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, *Coleman,* 501 U.S. at 752, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something in the trial court to preserve his claimed error for

---

[4] The Court obtained some of the information from the Oakland County Circuit Court website. See http://www.oakgov.com/circuit.  Public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice. *See United States ex. rel. Dingle v. BioPort Corp.,* 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003).  A federal district court is thus permitted to take judicial notice of another court's website. *See e.g. Graham v. Smith,* 292 F. Supp. 2d 153, 155, n.2 (D. Me. 2003).  The Court is also permitted to take judicial notice of OTIS. *See Ward v. Wolfenbarger,* 323 F. Supp. 2d 818, 821, n.3 (E.D. Mich. 2004).

appellate review, *e.g.*, to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady,* 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman,* 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust,* 17 F.3d at 162; *Murray v. Carrier,* 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle,* 260 F.3d 684, 693 (6th Cir. 2001). In addition, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman,* 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[ ] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson,* 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna,* 534 U.S. 362, 375 (2002). If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust,* 17 F.3d at 161.

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds

previously and actual prejudice resulting therefrom.  For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." Mich.Ct.R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  These orders, however, did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claim. *Id*.

In the present case, the Oakland County Circuit Court judge, in rejecting Petitioner's motion for relief from judgment, ruled that Petitioner had "failed to satisfy the good cause or actual prejudice prong of the two-prong standard of MCR 6.508(D)(3)." *People v. Buley,* No. 06-

206911-FC, * 9.  Because the trial court judge denied the petitioner post-conviction relief based on the procedural grounds stated in Mich.Ct.R. 6.508(D)(3), Petitioner's post-conviction claims, with the exception of the two subclaims discussed, *supra,* are clearly procedurally defaulted pursuant to Mich.Ct.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F.3d 284, 292-93 (6th Cir. 2007); *see also Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005).  The fact that the trial court may have also discussed the merits of Petitioner's claims in addition to invoking the provisions of Mich.Ct.R. 6.508(D)(3) to reject the petitioner's claims does not alter this analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999).  A federal court need not reach the merits of a habeas petition when the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  Petitioner's claims are procedurally defaulted. [5]

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default.   Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."
> *Id.* at 463 U.S. at 754.

---

[5] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F.3d at 291; *Hicks v. Straub*, 377 F.3d 538, 558, n.17 (6th Cir. 2004).  However, for the reasons stated below, Petitioner is not entitled to habeas relief on this claim.

Moreover, "a brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular,'—in a verbal mound made up of strong and weak contentions." *Id.* at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent."
> *Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue that was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has not demonstrated that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that Petitioner raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel filed a nineteen page appeal brief that raised the first two substantive claims that Petitioner has raised in his petition, along with a nine page reply brief.[6] Petitioner has not shown that appellate

---

[6] *See* Defendant-Appellant's Brief and Reply Brief. ECF No. 17-11.

counsel's strategy in presenting these two claims and not raising other claims was deficient or unreasonable.  Moreover, for the reasons stated by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, none of these claims that were raised by Petitioner in his post-conviction motion were "dead bang winners."  Because the defaulted claims are not "dead bang winners," Petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F.3d 674, 682-83 (6th Cir. 2000).

Moreover, because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by Petitioner.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Finally, it is noteworthy that, in addition to the appellate brief filed by appellate counsel, Petitioner filed a fifteen page supplemental Standard 4 *pro per* brief on his appeal of right before the Michigan Court of Appeals.[7]  Petitioner did not present any of the issues that he would subsequently raise for the first time on his post-conviction motion for relief from judgment. Petitioner took advantage of the opportunity pursuant to the Michigan Court Rules to file a supplemental appellate brief to raise claims that had not been raised by his appellate counsel, yet failed to include what make up his sixth and seventh claims in his supplemental brief.  Petitioner has not offered any explanation as to why he failed to raise his post-conviction claims in his

---

[7] *See* ECF No. 17-11.  In Michigan, a criminal defendant is permitted to file a supplemental *pro per* brief on appeal in addition to any appeal brief that may have been filed by appellate counsel. *See* Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004).

supplemental *pro per* brief that he filed as part of his direct appeal. Because Petitioner has offered no reasons for his failure to include these claims in his supplemental *pro per* brief on his direct appeal, he has failed to establish cause to excuse the default of these claims. *See Rockwell v. Palmer,* 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008) (habeas petitioner did not show any cause for his failure to raise on direct appeal his claim of ineffective assistance of trial counsel, where petitioner had filed two briefs on his own behalf raising other claims that had not been asserted by his appellate counsel, but he offered no explanation for his failure to raise the ineffective assistance claim at the same time).

Because Petitioner has not demonstrated any cause for the procedural default of the ineffective assistance of trial claims that he raised for the first time before the state courts on post-conviction review, it is unnecessary to reach the prejudice issue. *Smith*, 477 U.S. at 533; *Long v. McKeen,* 722 F.2d 286, 289 (6th Cir. 1983).

Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence that would allow consideration of any of the claims that Petitioner raised in his post-conviction motion for relief from judgment as grounds for a writ of habeas corpus despite the procedural default. Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review Petitioner's procedurally defaulted claims on the merits. *See Wolfe v. Bock*, 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Petitioner is not entitled to habeas relief on his claims.

IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003).  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack,* 529 U.S. at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted. *Id.*

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability is not warranted in this case.  The Court further concludes that Petitioner should not

be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See

Fed.R.App. P. 24(a).

V.

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas

relief on the claims contained in his petition.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus (ECF No. 1, 4,

and 28) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is

**DENIED.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 2, 2014

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney of record herein by electronic means and upon
Dwight Buley #337304 at Chippewa Correctional Facility, 4269 W. M-
80, Kincheloe, MI 49784 by first class U.S. mail on September 2, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS